UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                                   :

CONSTANTINE CHEESE,                :

                                 Plaintiff,      :              No. 13-CV-3982

    -against-                :              **COMPLAINT AND**
                                                   :              **DEMAND FOR**
THEO PRIMM, Captain at Rikers    :              **JURY TRIAL**
Island Correctional Facility;
CHRISTOPHER LOPEZ,
Correctional Officer at Rikers Island

                                Defendants
--------------------------------------------------------x

## PRELIMINARY STATEMENT

This is an action against two Rikers Island officials – Captain Theo Primm and Officer Christopher Lopez – who brutally beat Rikers Island inmate Constantine Cheese, using a mallet and hand-held radio, while he was restrained face-down on the ground in hand-cuffs, thus completely incapable of defending himself.

Mr. Cheese seeks compensatory and punitive damages, in addition to such other damages as this Court sees fit.

## PARTIES

1.      Plaintiff Constantine Cheese is a citizen of New York, and currently resides at Dannemora, New York, where he is detained at the Clinton Correctional Facility ("Clinton"). All of the events giving rise to the complaint occurred in the State of New York, while Mr. Cheese was in the Robert N. Davoren Center ("RNDC") at Rikers Island Correctional Facility ("Rikers Island") under custody of the New York City Department of Correction ("DOC").

2. Defendant Captain Theo Primm is and was, at all times relevant hereto, a DOC employee, who at all times relevant hereto was assigned to Rikers Island. Defendant Primm is being sued in his individual capacity

3. Defendant Officer Christopher Lopez is and was, at all times relevant hereto, a DOC employee who at all times relevant hereto was assigned to Rikers Island. Defendant Lopez is being sued in his individual capacity.

## JURISDICTION AND VENUE

4. This action arises under the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Rikers Island in the Eastern District of New York.

## FACTUAL ALLEGATIONS

7. In October 2010, Mr. Cheese was detained at RNDC in Rikers Island pending the resolution of criminal charges against him. Mr. Cheese had been detained in Rikers Island since June 2009.

**Request for Emergency Medical Treatment**

8. At approximately 2:30 p.m. on Tuesday, October 19, 2010, Mr. Cheese returned from recreation time to his cellblock, 6 Upper, in RNDC, and approached Officer Thomas, who was located inside an enclosed area for corrections officer known as the "bubble," to request medical treatment because he was urinating blood.

9. After Officer Thomas placed a call to approve Mr. Cheese's request, Officer Thomas told Mr. Cheese that his request had been approved. Officer Thomas told Mr. Cheese to talk to Defendant Lopez, who would arrange for Mr. Cheese to be escorted to the medical office.

10. Defendant Lopez was stationed inside one wing of the 6 Upper housing area, which was located a short distance away from the bubble, separated by a corridor. Upon information and belief, this wing of the 6 Upper housing area contained several inmates housed in individual cells.

11. Defendant Lopez informed Mr. Cheese that he would escort him to the medical office when his shift ended at 3 p.m.

12. At approximately 2:30 p.m., prison officials commenced "count," a process in which all inmates return to their cells so that prison officials may complete a count of all inmates in detention and verify the location of all inmates. As is the usual practice, inmates were informed that count had started because the televisions in the main housing area were turned off.

13. After count commenced, all inmates in 6 Upper returned to their cells except for Mr. Cheese, who was waiting near Defendant Lopez; and three other inmates, Troy Garrett, Joseph Lewis, and Christopher Roper, who were assigned to cleaning duty and who were cleaning the housing area and adjoining day room.

14. Upon information and belief, it is common for inmates who are awaiting escort to medical treatment or on cleaning duty to remain outside of their cells while count is called.

**Initial confrontation with Captain Theo Primm**

15. Soon after count had commenced, when all inmates were inside the cell, Defendant Primm entered the housing area from the corridor adjoining the bubble and immediately approached Mr. Cheese, aggressively asking in sum and substance "what the fuck are you doing outside of the cell?"

16. Mr. Cheese responded that he had an "emergency sick call" because he was urinating blood.

17. Though Defendant Lopez had given Mr. Cheese permission to remain outside of his cell, Defendant Lopez remained silent.

18. Defendant Primm placed his hand on Mr. Cheese's arm and started pushing him towards Mr. Cheese's cell, repeatedly shouting that he had to "lock the fuck in."

19. Defendant Primm's behavior towards Mr. Cheese was excessively aggressive and inappropriate, given that Mr. Cheese had received permission to get treatment for his medical condition.

20. Frustrated that his request for medical treatment was being ignored, Mr. Cheese pushed Defendant Primm's hand from his arm.

21. Defendant Primm immediately and unnecessarily sprayed oleoresin capsicum spray, a chemical agent similar to mace that is also known as "OC spray," into Mr. Cheese's eyes, temporarily blinding him and causing him severe pain.

22. As a result of the spray, Mr. Cheese fell to the floor and covered his face and eyes. Defendant Primm proceeded to strike Mr. Cheese on the head and back with his fists.

23. Defendant Primm's use of force while Mr. Cheese was incapacitated was unnecessary and unprovoked.

24. While Defendant Primm was assaulting Mr. Cheese, a separate altercation broke out between Defendant Lopez and Troy Garrett. Mr. Cheese does not know the reason for this altercation because he was shielding himself from Defendant Primm's attack.

25. Upon information and belief, soon after this altercation began, either Defendant Primm, Defendant Lopez, or Officer Thomas "pulled the pin" on their radios to summon support from a "probe team" consisting of three corrections officers in riot gear.

26. Very shortly thereafter, a single probe team of three officers arrived, followed shortly afterwards by two other probe or response teams. While Mr. Cheese continued to shield himself from further attack, a larger fight ensued between the probe team members and the other inmates.

**Handcuffing of Mr. Cheese and Assault by Captain Primm and Officer Lopez**

27. Upon information and belief, one or more members of the probe teams pushed Mr. Cheese face-down to the floor, pulled his arms behind his back, and restrained his hands in handcuffs or flex cuffs. As the probe team continued to push Mr. Cheese into the ground, he turned his head to the side to avoid having his face ground into the floor.

28. Immediately after Mr. Cheese's hands were cuffed behind his back, both Defendants Primm and Lopez continued to assault Mr. Cheese. Defendant Lopez struck Mr. Cheese on the side of his head, above his right eye, with a heavy object, causing a large bruise and cut above Mr. Cheese's right eye. Upon information and belief, this object was a mallet. Defendant Primm struck him savagely in the face with a heavy object, splitting open his upper lip. Upon information and belief, this object was a hand-held radio issued to staff at Rikers.

29. While lying on the ground after this attack, Mr. Cheese moved his tongue which he felt go through his split lip, causing extreme pain and stinging, which is how he realized that his lip had been split open.

30. Defendants Primm and Lopez's use of force while Mr. Cheese was incapacitated and defenseless was malicious and totally unjustifiable.

**Aftermath of Assault**

31. Soon afterwards, when the fight had ended, Mr. Cheese was transported to the RNDC intake area to receive medical treatment. As he passed Defendant Primm on the way to the intake area, Defendant Primm taunted Mr. Cheese, saying "that's why I bust your shit."

32. While Mr. Cheese received treatment for the wounds inflicted by Defendants Primm and Lopez, he did not receive treatment for the blood in his urine, as he had initially requested.

33. As a result of Defendants Primm and Lopez's actions, Mr. Cheese suffered severe physical and emotional injuries, including a laceration and bruising around his right eye, and multiple cuts and bruises to his body and face. Further, Mr. Cheese's upper lip was split entirely open, ultimately requiring seven to nine stitches to the inside and outside of his lip, and he still bears a scar to this day from the gash to his lip.

**Recent Department of Justice Investigation**

34. Defendants' use of force against Mr. Cheese is consistent with many of the findings by the Department of Justice ("DOJ") in its recent CRIPA investigation of the New York City Department of Correction Jails on Rikers Island. *See* http://www.justice.gov/usao/nys/pressreleases/August14/RikersReportPR/SDNY%20Rikers%20Report.pdf Although that investigation focused on adolescents, DOJ found that the systemic and

alarming pattern of excessive force against adolescents may exist "in equal measure" throughout the adult jails as well. Furthermore, DOJ's investigation focused primarily on the actions of jail staff in RNDC, the same jail in which Mr. Cheese was beaten.

35. In particular, two of DOJ's findings are strikingly consistent with the use of force against Mr. Cheese. First, DOJ found that DOC staff use headshots – strikes to the head and face – too frequently and to punish prisoners. DOJ also found that DOC officers continue to use force against prisoners after restraints have been applied. Defendants brutal use of head shots with a radio and a mallet are consistent with the DOJ's findings.

## CAUSES OF ACTION

## COUNT 1

**Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983**
**(Excessive Force in Violation of the Eighth and Fourteenth Amendments)**

**Against Defendant Primm**

36. Plaintiff repeats and realleges Paragraphs 1 through 33 as if fully set forth herein.

37. Defendant Primm used force against Plaintiff on October 19, 2010, at approximately 2:30 p.m., when he struck Plaintiff in the head with a portable radio while Plaintiff was restrained on the ground in flex-cuffs.

38. Defendant Primm's use of force against Plaintiff was excessive and applied maliciously and sadistically for the very purpose of causing harm, and not in a good faith effort to achieve a legitimate purpose such as to maintain order in the prison.

39. The conduct of Defendant Primm in using excessive force against Plaintiff was performed under color of state law.

40. The conduct of Defendant Primmin using excessive force against Plaintiff deprived Plaintiff of his Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

## COUNT 2

### Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983
### (Excessive Force in Violation of the Eighth and Fourteenth Amendments)

### Against Defendant Lopez

41. Plaintiff repeats and realleges Paragraphs 1 through 33 as if fully set forth herein.

42. Defendant Lopez used force against Plaintiff on October 19, 2010, at approximately 2:30 p.m., when he struck Plaintiff in the head with a mallet while Plaintiff was restrained on the ground in flex-cuffs.

43. Defendant Lopez's use of force against Plaintiff was excessive and applied maliciously and sadistically for the very purpose of causing harm, and not in a good faith effort to achieve a legitimate purpose such as to maintain order in the prison.

44. The conduct of Defendant Lopez in using excessive force against Plaintiff was performed under color of state law.

45. The conduct of Defendant Lopez in using excessive force against Plaintiff deprived Plaintiff of his Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

### DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff Constantine Cheese respectfully requests judgment against Defendants as follows:

(A) a declaration that Defendants have violated the Civil Rights Act of 42 U.S.C. § 1983 by depriving Plaintiff of his rights, privileges, and immunities guaranteed by the Fourteenth Amendment of the United States Constitution;

(B) an order awarding compensatory damages against Defendants Primm and Lopez, in an amount to be determined at trial;

(C) an order awarding punitive damages against Defendants Primm and Lopez, in an amount to be determined at trial;

(D) reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

(E) directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Constantine Cheese hereby demands trial by jury on all claims asserted in the above complaint.

Dated: August 20, 2014
       New York, NY

By: _____/s_____

Betsy Ginsberg, Esq.

Civil Rights Clinic
Benjamin N. Cardozo School of Law
55 5th Avenue, 11th Floor
New York, NY 10003
Tel: (212) 790-0871